IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| EMORY E. GIBSON, JR., | : | |
| Plaintiff, | : | Civil No. 02-5470 (RBK) |
| v. | : | **OPINION** |
| SUPERINTENDENT OF NEW JERSEY DEPARTMENT OF LAW & PUBLIC SAFETY-DIVISION OF STATE POLICE, et al., | : | |
| Defendants. | : | |

Presently before the Court are motions by defendant New Jersey Turnpike Authority ("NJTA"), defendant New Jersey State Troopers Sean Reilly ("Reilly") and J.W. Pennypacker ("Pennypacker"), and defendants Peter Verniero, Ronald Susswein, John Fahy, and George Rover (the "Attorney General Defendants") (collectively "Defendants") to dismiss claims by plaintiff Emory Gibson ("Plaintiff") alleging violations of his rights as guaranteed by the New Jersey Constitution.[1] For the reasons set forth below, this Court will grant in part and deny in part Defendants' motions.

---

[1] The Attorney General Defendants filed the first of these motions, supported by a thorough brief. Defendants Reilly and Pennypacker filed a subsequent motion, stating that they would rely on the Attorney General Defendants' brief. Finally, the NJTA filed a motion, supported by a very concise brief – the section arguing that Plaintiff's claim was time-barred consisted of five sentences – containing no insights beyond those included in the Attorney General Defendants' brief. The NJTA further noted that it would adopt the arguments set forth in the Attorney General Defendants' brief. Accordingly, in this Opinion, this Court cites to the Attorney General Defendants' brief as that which advocates on behalf of all Defendants.

I.       **BACKGROUND**[2]

On October 28, 1992, New Jersey State Troopers Reilly and Pennypacker stopped a vehicle containing three black occupants on the New Jersey Turnpike. Reilly and Pennypacker searched the automobile, discovered drugs, and arrested the three occupants for possession. Plaintiff, a passenger in the vehicle at the time of the stop, was subsequently convicted of two counts of drug offenses in the Superior Court of New Jersey, Salem County, on April 21, 1994. While incarcerated, Plaintiff filed a motion for post-conviction relief on February 18, 1999. The Superior Court of New Jersey granted Plaintiff's motion to dismiss on April 19, 2002, vacating his conviction on the grounds that "there was a colorable basis to believe that Plaintiff's stop and arrest was the result of an unlawful racial profiling stop." (Opn., Dec. 12, 2003, at 10.)

Plaintiff filed the above-captioned civil action on November 14, 2002, against Defendants Trooper Reilly and Pennypacker, Superintendent, New Jersey Department of Law and Public Safety, Division of State Police, Treasurer, State of New Jersey Treasury Department, the Attorney General Defendants, including former New Jersey Attorney General Peter Verniero, Deputy Attorney General Ronald Susswein, Deputy Attorney General John Fahy, and Deputy Attorney General George Rover, and the NJTA.

On December 12, 2003, this Court issued an Order ("December Opinion and Order") dismissing as time-barred Plaintiff's claims for unreasonable stop and search under the Fourth

---

[2] Because the parties are by now intimately familiar with the history of this litigation, and because the factual background is recounted in detail in this Court's opinion of December 12, 2003, this Opinion will include only those facts pertinent to the disposition of the motions presently before the Court.

Amendment, (Opn., Dec. 12, 2003, at 20), Plaintiff's claims against the New Jersey State Police for failure to train, supervise, or remedy discrimination, (Opn., Dec. 12, 2003, at 25), and Plaintiff's claims for selective enforcement under the Fourteenth Amendment, (Opn., Dec. 12, 2003, at 23-24).[3] The Court also dismissed Plaintiff's claims for malicious prosecution, (Opn., Dec. 12, 2003, at 21), and for mistaken imprisonment against the Treasurer of New Jersey, (Opn., Dec. 12, 2003, at 34). The Court declined to dismiss Plaintiff's access to courts claim, requesting oral argument and further briefing on the issue of whether Defendants had qualified immunity. (Opn., Dec. 12, 2003, at 32.)

In its Opinion of February 24, 2004 ("February Opinion and Order"), this Court dismissed Plaintiff's claim for denial of access to courts against Defendants Reilly and Pennypacker and the Attorney General Defendants on qualified immunity grounds. (Opn., Feb. 24, 2004, at 15.) The Court also dismissed as time-barred Plaintiff's conspiracy claim against Reilly and Pennypacker, (Opn., Feb. 24, 2004, at 16), and the claims against the NJTA, "encompassed in paragraphs 7, 54, and 76 of the complaint" for "absence of any facts supporting the allegations against the NJTA,"[4] (Opn., Feb. 24, 2004, at 16-17.) Lastly, the Court dismissed the state law claims in

---

[3] Although the Court addresses the statute of limitations issues presented by the claims against the NJTA in its December Opinion, the Court declined to consider the NJTA's entitlement to relief since the NJTA did not file a formal motion to dismiss. (Opn., Dec. 12, 2003, at n.1.)

[4] These allegations include Plaintiff's claims that the NJTA "had a practice of failure to train, discipline and supervise the New Jersey State Police officers who patrolled the Turnpike, failing to establish a meaningful department system for handling complaints, failing to promptly notify courts and the public of racial profiling evidence, and intentionally suppressing known evidence of racial profiling that would have benefitted Gibson." (Opn., Feb. 24, 2004, at 16-17.)

3

Counts 5 through 7 for lack of jurisdiction since all federal claims had been terminated.[5] (Opn., Feb. 24, 2004, at 19.)

Plaintiff appealed this Court's December and February Opinions and Orders to the Third Circuit. In an Opinion issued June 14, 2005, the Third Circuit affirmed in part and reversed in part the decision below. In particular, the Third Circuit reinstated Plaintiff's claims in "Count One under 42 U.S.C. § 1983 that the Troopers violated his Fourth Amendment rights, and unconstitutionally subjected him to selective enforcement of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment," Plaintiff's conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and "the state law claims." Gibson v. Superintendent of New Jersey Department of Law and Public Safety, 411 F.3d 427, 446 (3d Cir. 2005). The Court affirmed the "dismissal of all the remaining claims." Id.

The parties subsequently filed cross-motions for clarification of the claims remaining after remand. In an Opinion issued August 16, 2006, this Court determined "that the issues remaining for trial [were] Plaintiff's claims for: (1) selective enforcement under the Fourteenth Amendment against Defendants Reilly and Pennypacker; (2) unconstitutional search and seizure, including Plaintiff's alleged detention, arrest, and false imprisonment, under the Fourth Amendment against Defendants Reilly and Pennypacker; (3) conspiracy between Defendants Reilly and Pennypacker under 42 U.S.C. § 1983 and § 1985; and (4) Plaintiff's state law claims against the NJTA, the Attorney General Defendants, and Reilly and Pennypacker." (Opn., Aug. 16, 2006, at 1-2.) This Court further determined that "Plaintiff's access to court claims for failure to provide exculpatory evidence [were] dismissed in their entirety." (Opn., Aug. 16,

---

[5] The Complaint does not contain a Count 6.

4

2006, at 2.)

## II. STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(c) is identical to one filed pursuant to Rule 12(b)(6), save for the fact that Rule 12(c) allows for a motion to be filed subsequent to the filing of an answer, while Rule 12(b)(6) allows for a motion to be made in lieu of an answer. Accordingly, the Court uses identical guidelines in evaluating motions made under either Rule. Turbe v. Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

When reviewing a motion to dismiss, the Court must accept as true all allegations in the complaint and must provide the plaintiff with the benefit of all inferences that may be fairly drawn from the contents of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993); Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989). The Court may not grant a motion to dismiss unless it is certain that no set of facts can be proven that would entitle the plaintiff to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

## III. ANALYSIS

In the motions presently before this Court, Defendants assert that Plaintiff's claims alleging violations of New Jersey constitutional law are time-barred, as this litigation was commenced after the statute of limitations for these claims had lapsed.

Prior to engaging in this analysis, this Court first notes that Plaintiff's claims for these violations are contained in Count 5 of his Complaint. He claims violations of his rights as

5

guaranteed under the New Jersey Constitution, Article 1, §§ 1 (Due process and equal protection), 5 (Denial of rights, discrimination) and 7 (Freedom from unreasonable searches and seizures). (Compl. ¶ 93.) Based on a fair reading of the briefs accompanying the present motions, the parties agree that these claims consist of allegations of false arrest, illegal search, and racially selective enforcement of the laws. The parties apparently dispute whether this Count includes an allegation of conduct that perpetuated discriminatory enforcement of the laws.

### A.     Applicable Statute of Limitations

The parties agree that the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. §§ 10:6-1, et seq., provides the vehicle by which a plaintiff can bring suit for a violation of his state constitutional rights, similar to the way in which 42 U.S.C. § 1983 provides a vehicle for a plaintiff to sue for a violation of his federal constitutional rights. Actions brought in New Jersey pursuant to § 1983 "are governed by [the] two-year statute of limitations applicable to personal injury torts." Freeman v. New Jersey, 788 A.2d 867, 874 (N.J. Super. Ct. App. Div. 2002) (citing N.J. Stat. Ann. § 2A:14-2; Cito v. Bridgewater Twp. Police Dept., 892 F.2d 23, 24 (3d Cir.1989)). The parties agree that a similar statute of limitations applies for such claims brought pursuant to the NJCRA, as it is derived from state law. Freeman, 788 A.2d at 874.

In most cases, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). As the incident giving rise to this lawsuit occurred in 1992, and this litigation was not commenced until 2002, these claims would appear to be time-barred. However, in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that this rule is inapplicable if the plaintiff's lawsuit, were it to be successful, would

render the underlying criminal conviction or imprisonment to be invalid.  In such cases, the cause of action is not said to have arisen "until the conviction or sentence has been invalidated." Id. at 490.  As Plaintiff's conviction was not vacated until 2002, his lawsuit would be considered to be timely filed should the Heck rule be deemed to apply.  Accordingly, the parties contest whether Heck's delayed accrual rule is applicable to Plaintiff's claims brought pursuant to the NJCRA.

In conducting this analysis, this Court does not write on a blank slate.  Indeed, the Third Circuit's prior Opinion in this case addressed similar issues regarding Plaintiff's claims brought pursuant to § 1983.  Inasmuch as this analysis is applicable to the issues presently before this Court, this Court will rely on this analysis in applying the Heck doctrine to Plaintiff's state constitutional claims.

      B.     Plaintiff's Claims for False Arrest and Illegal Search

The substance underlying these claims is the same as that underlying Plaintiff's identical claims brought pursuant to § 1983 alleging violations of his Fourth Amendment rights.  In its prior Opinion, the Third Circuit noted that "in some cases Fourth Amendment claims for false arrest begin to accrue at the time of arrest, not when the conviction is overturned." Gibson, 411 F.3d at 450.  The Court went on to state that "[t]his occurs when a false arrest claim will not necessarily undermine a conviction or sentence." Id.

However, the Third Circuit further held that "Heck does not set forth a categorical rule that all Fourth Amendment claims accrue at the time of the violation." Id.  Instead, the Court determined that each case must be subjected to a fact-based analysis.  Characterizing this case as one "where the only evidence supporting the conviction is tainted by a possible constitutional violation that is the subject of a § 1983 action," id. at 452, the Court held that "[Plaintiff's]

7

actual, compensable injury was 'the 'injury' of being convicted and imprisoned,' which was not actionable until the conviction was overturned." Id. (quoting Heck, 512 U.S. at 487 n.7). Accordingly, the Third Circuit held that "under Heck, Gibson's Fourth Amendment claims were not cognizable and did not accrue until his conviction was invalidated in April 2002. Thus, these claims, when filed in November 2002, were raised well within the two-year statute of limitations." Gibson, 411 F.3d at 452.

While the Third Circuit's ruling would seem to bind this Court in the instant matter, the Supreme Court has since issued a ruling which appears to contradict the Third Circuit's recent holding. In Wallace v. Kato, 127 S. Ct. 1091 (2007), the Supreme Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 1100. In so holding, the Court characterized Heck as delaying "what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." Id. at 1098. Regarding false arrest cases, the Court stated that in order to defer accrual of the claim, it would need to extend the Heck principle to state "that an action which would impugn *an anticipated future conviction* cannot be brought until that conviction occurs and is set aside." Id. (emphasis original). Finding such a principle to be impracticable, the Court stated that it was "not disposed to embrace this bizarre extension of Heck." Id.

Based on this language, this Court is persuaded that the Supreme Court's holding in Wallace effectively supercedes the Third Circuit's reasoning in its prior decision in this case. Insofar as Plaintiff alleges violations of his state constitutional rights consisting of false arrest

8

and illegal search (the search occurring pursuant to the challenged arrest), this Court finds the Supreme Court's holding in Wallace to be applicable. Accordingly, this Court finds Heck to be inapplicable in such circumstances. Subsequently, this Court will find Plaintiff's claims brought pursuant to the NJCRA alleging false arrest and illegal search to be time-barred.

      C.      <u>Plaintiff's Claim for Racially Selective Enforcement of the Laws</u>

Just as Plaintiff's NJCRA claims for false arrest and illegal search mirrored his Fourth Amendment claims under § 1983, so too is his NJCRA claim for racially selective enforcement of the laws identical to that brought under § 1983 alleging violations of his Fourteenth Amendment rights.

In its prior Opinion, the Third Circuit addressed the application of the deferred accrual rule to Plaintiff's Fourteenth Amendment claim. The Court held that "[b]ecause a successful claim of selective enforcement under the Fourteenth Amendment Equal Protection Clause would have necessarily invalidated Gibson's conviction, under the Heck deferred accrual rule the statute of limitations did not begin to run until his sentence was vacated and this claim is not untimely." <u>Gibson</u>, 411 F.3d at 441. This Court finds the Third Circuit's holding to be equally applicable to Plaintiff's claim for racially selective enforcement of the laws in violation of his state constitutional rights. Accordingly, this Court finds the <u>Heck</u> deferred accrual rule to be applicable to this claim, and subsequently finds this claim to not be time-barred.

      D.      <u>Plaintiff's Claim for Conduct that Perpetuated Discriminatory Enforcement of the Laws</u>

The parties apparently disagree over whether Count 5 in Plaintiff's Complaint, which alleges violations of his state constitutional rights, includes a claim for conduct that perpetuated

9

discriminatory enforcement of the laws.  In his brief opposing the present motions, Plaintiff is unclear as to whether this language merely repeats the equal protection allegations addressed in Section III(C) or rather references Plaintiff's allegations that Defendants deprived him of his right of access to the courts.

On one hand, Plaintiff states that Defendants "do not specifically address plaintiff's claims under Count V and Count VII that the defendants' conduct in suppressing evidence of racial discrimination, in the words of the Third Circuit, was sufficient to establish that they 'used their positions to perpetuate the discriminatory enforcement of the law and to obstruct those convicted as a result of the discriminatory enforcement from obtaining relief.'" (Pl's. Br. at 4) (quoting Gibson, 411 F.3d at 445).  However, this language quoted from the Third Circuit's Opinion is contained in the Court's analysis of Plaintiff's claim alleging depravation of his access to the courts.  In its most recent Opinion clarifying which claims were properly before the Court, this Court stated that "because Plaintiff has not alleged an access to courts claim under state law and the Third Circuit affirmed dismissal of all such claims under federal law, Plaintiff cannot pursue any claims for the alleged failure to disclose exculpatory evidence." (Opn., Aug. 16, 2006, at 9.)  Therefore, insofar as Plaintiff hints at the existence of such a claim pursuant to state law, this Court firmly reiterates its determination that no such claim exists.

Alternatively, Plaintiff's brief includes language that suggests that this claim alleges that Defendants' "conduct which perpetuated racial discrimination deprived plaintiff of his state constitutional right to be free from race discrimination." (Pl's. Br. at 5.)  Plaintiff analogizes the protections afforded him in this regard by the New Jersey Constitution as being analogous to those contained in the Fourteenth Amendment to the United States Constitution.  For this Court

10

to distinguish this claim from that alleging racially selective enforcement of the laws, however, it must construe Plaintiff to be alleging that Defendants' alleged conduct that *perpetuated discrimination* is to be considered apart from Defendants' alleged conduct that *actually discriminated* against Plaintiff.

This conduct that allegedly perpetuated discrimination appears to consist of the same factual allegations that comprised Plaintiff's allegations regarding access to the courts, namely the allegations that Defendants failed to disclose exculpatory evidence. Insofar as this such is the case, this Court will not allow this allegation to withstand a separate claim under the NJCRA. As this Court noted in its prior Opinion, "Count 5 of Plaintiff's Complaint, addressing Plaintiff's state constitutional claims, nowhere mentions a failure to disclose exculpatory evidence." (Opn., Aug. 16, 2006, at 8-9.) Based on this finding, insofar as Plaintiff is presently attempting to construct an additional claim alleging a violation of his equal protection rights as guaranteed under the New Jersey Constitution by specifically relying on an allegation regarding a failure to disclose exculpatory evidence, this Court will not allow him to do so. Accordingly, this Court will grant Defendants' motion to dismiss as it pertains to this claim.

    E.    <u>Count 7 of Plaintiff's Complaint</u>

In the briefing supporting this motion to dismiss, Defendants operate under the presumption that the state constitutional claims are the only state claims which remain against them. This Court notes that this assumption is incorrect, as Count 7 of Plaintiff's Complaint sets forth a claim for mistaken imprisonment pursuant to N.J. Stat. Ann. §§ 52:4C-1, <u>et</u> <u>seq.</u>. Defendants appear to have reached this faulty conclusion by assuming that in its prior Opinion, the Third Circuit "reinstated Counts One, Three, Four and Five and affirmed the dismissal of all

11

remaining claims which included Count Seven of the plaintiff's complaint." (Defs.' Reply Br. at 2-3.) This is simply false. In its Opinion, the Third Circuit stated that "[w]e will also reinstate the state law claims." Gibson, 411 F.3d at 446. Moreover, as this Court noted in its Opinion resolving the parties' cross-motions for clarification, this Court had initially dismissed the state claims by declining to exercise supplemental jurisdiction over them once it had dismissed all federal claims. This Court further noted that once certain federal claims were remanded for trial by the Third Circuit, supplemental jurisdiction over the state claims was revived. Accordingly, this Court held that "Plaintiff's state law claims against the NJTA, the Attorney General Defendants, and Reilly and Pennypacker" were remanded for trial. (Opn., Aug. 16, 2006, at 12-13.) Neither the Third Circuit's Opinion nor this Court's subsequent Opinion made any mention of Count 7 being dismissed; rather, this Court noted that Plaintiff's state law claims were instead remanded for trial.

Defendants appear to stake their mistaken belief on a letter drafted by Plaintiff's counsel to the Court on April 26, 2006, implying counsel's assumption that the remaining state law claims against Defendants were based on the New Jersey Constitution. However, given that this letter was drafted before this Court's Opinion on the cross-motions for clarification, this Court does not find it to be of particular relevance.

Subsequently, this Court finds that Defendants' present motions do not ask this Court to dismiss Count 7 of Plaintiff's Complaint. As such, this Court notes that this Count remains against all defendants.

    F.    <u>Supplemental Jurisdiction</u>

As this Court has denied in part Defendants' motion to dismiss, it must subsequently

reach Defendant's argument that this Court should decline to exercise supplemental jurisdiction over the remaining state claims.  This argument is advocated by the Attorney General Defendants and the NJTA, as no federal claims presently exist against these parties.  Accordingly, this Court must determine whether it should exercise its pendant jurisdiction over the remaining state claims.

       This Court retains supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367(a).  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  When a district court has dismissed all claims over which it had original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over the remaining state claims.  28 U.S.C. § 1367(c)(3).

       In determining whether to exercise jurisdiction in such a matter, a district court must determine "whether there is a 'common nucleus of operative fact' between the state claim at issue and the accompanying federal claims . . . [and] whether the exercise of jurisdiction at issue would violate a particular federal policy decision . . . ."  Ambromovage v. United Mine Workers, 726 F.2d 972, 989-90 (3d Cir. 1984) (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  Furthermore, a district court must "weigh various factors bearing on the appropriateness of hearing a pendent claim."  Ambromovage, 726 F.2d at 990.  Using its discretion, a district court may decline to exercise jurisdiction over the pendant claims "in order to promote convenience, judicial economy, and fairness to litigants, and to protect interests of federalism."

13

Id. at 990 n.53.

In this case, Defendants concede that the state claims share a common nucleus of operative fact with the federal claims.  Moreover, this Court notes that this case has been pending before this Court for over four years.  Finally, this Court notes that while the federal claims have been dismissed against the Attorney General Defendants and the NJTA, federal claims do remain against Reilly and Pennypacker.  Subsequently, claims for which this Court has original jurisdiction remain as to some of the defendants, and this Court will retain its supplemental jurisdiction over the state claims as pertaining to these defendants.  Given that the state claims against Reilly and Pennypacker are identical to those against the Attorney General Defendants and the NJTA, it would make little sense for this Court to retain jurisdiction over the state claims against some defendants but not others.

As such, this Court concludes that the interests of judicial economy and fairness to litigants are best protected by retaining supplemental jurisdiction over the pendant state claims against all defendants.  See Sparks v. Hershey, 661 F.2d 30, 33 (3d Cir. 1981) ("[W]here . . . the district court does not set forth a persuasive, reasoned elaboration for dismissing the state claims, we are inclined to believe that the dictates of 'judicial economy, convenience, fairness to the parties, and comity' are better served by recognizing pendent jurisdiction.") (quoting Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 478 (3d Cir. 1979)).  Accordingly, this Court will retain jurisdiction over the pendant state claims.

### IV.  CONCLUSION

Based on the foregoing reasoning, this Court will grant in part and deny in part

Defendants' motions to dismiss.  Specifically, this Court will grant Defendants' motions to dismiss as they pertain to Plaintiff's state constitutional claims alleging false arrest, illegal search, and conduct that perpetuated discriminatory enforcement of the laws.  This Court will deny Defendants' motions to dismiss pertaining to Plaintiff's state constitutional claim for racially selective enforcement of the laws.  This Court further notes that Plaintiff's claim for mistaken imprisonment pursuant to N.J. Stat. Ann. §§ 52:4C-1, et seq., remains before this Court.  Finally, this Court will deny Defendants' motions to dismiss insofar as they ask this Court to decline to exercise supplemental jurisdiction over the state law claims.  An accompanying Order shall issue today.


Dated:  March 29, 2007                                   s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge