(Docket Nos. 173, 175)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EMORY E. GIBSON, JR., | : |
| Plaintiff, | Civil No. 02-5470 (RBK/AMD) |
| v. | **OPINION** |
| SUPERINTENDENT OF NEW JERSEY DEPARTMENT OF LAW & PUBLIC SAFETY-DIVISION OF STATE POLICE, NEW JERSEY TURNPIKE AUTHORITY, SEAN REILLY, J.W. PENNYPACKER, | |
| Defendants. | |

**KUGLER**, United States District Judge:

Presently before the Court are motions by Defendant New Jersey Turnpike Authority ("NJTA") and Defendants New Jersey State Troopers Sean Reilly and J. W. Pennypacker ("Trooper Defendants") (collectively, "Defendants") for summary judgment on the Complaint of Plaintiff Emory Gibson ("Plaintiff") alleging violations of his rights as guaranteed by the United States and New Jersey Constitutions. For the reasons set forth below, this Court will grant the NJTA's motion and deny the Trooper Defendants' motion.

**I.   BACKGROUND**[1]

---

[1] Because the parties are by now intimately familiar with the history of this litigation, and because the factual background is recounted in detail in this Court's first opinion in this case, Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 30, 31, Civ. No. 02-5470 (D.N.J. Dec. 12, 2003) ("Gibson I") this Opinion will include only those facts

1

On October 28, 1992, New Jersey State Troopers Reilly and Pennypacker stopped a vehicle containing three black occupants on the New Jersey Turnpike. Reilly and Pennypacker searched the automobile, discovered drugs, and arrested the three occupants for possession. Plaintiff, a passenger in the vehicle at the time of the stop, was subsequently convicted of drug offenses in the Superior Court of New Jersey, Salem County, on April 21, 1994. While incarcerated, Plaintiff filed a motion for post-conviction relief on February 18, 1999. The Superior Court of New Jersey vacated Plaintiff's conviction on April 19, 2002 on the grounds that "there was a colorable basis to believe that Plaintiff's stop and arrest was the result of an unlawful racial profiling stop." Gibson I, at 10.

Plaintiff filed the above-captioned civil action on November 14, 2002, against Defendant Troopers Reilly and Pennypacker; Superintendent, New Jersey Department of Law and Public Safety, Division of State Police; Treasurer, State of New Jersey Treasury Department; the Attorney General Defendants, including former New Jersey Attorney General Peter Verniero, Deputy Attorney General Ronald Susswein, Deputy Attorney General John Fahy, and Deputy Attorney General George Rover; and the NJTA.

On December 12, 2003, this Court dismissed as time-barred Plaintiff's claims for unreasonable stop and search under the Fourth Amendment; Plaintiff's claims against the New Jersey State Police for failure to train, supervise, or remedy discrimination; and Plaintiff's claims for selective enforcement under the Fourteenth Amendment. The Court also dismissed Plaintiff's claims for malicious prosecution and for mistaken imprisonment against the Treasurer of New Jersey. The Court declined to dismiss Plaintiff's access to courts claim, requesting oral

---

pertinent to the disposition of the motions presently before the Court.

argument and further briefing on the issue of qualified immunity.  In the second opinion in this case, Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 41, 42, Civ. No. 02-5470 (D.N.J. Feb. 24, 2004) ("Gibson II"), this Court dismissed Plaintiff's claim for denial of access to courts against Defendants Reilly and Pennypacker and the Attorney General Defendants on qualified immunity grounds.  Gibson II, at 15.  The Court also dismissed as time-barred Plaintiff's conspiracy claim against Reilly and Pennypacker, and the claims against the NJTA for "absence of any facts supporting the allegations against the NJTA."  Gibson II, at 16-17.  Lastly, the Court dismissed the state law claims in Counts 5 and 7 for lack of jurisdiction, because all federal claims had been terminated.[2]  Gibson II, at 19.

Plaintiff appealed this Court's decisions in Gibson I and II to the Third Circuit.  In an Opinion issued June 14, 2005, the Third Circuit affirmed in part and reversed in part.  Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, 411 F.3d 427 (3d Cir. 2005) ("Gibson III").  In particular, the Third Circuit reinstated Plaintiff's claims in "Count One under 42 U.S.C. § 1983 that the Troopers violated his Fourth Amendment rights, and unconstitutionally subjected him to selective enforcement of the laws in violation of the Equal Protection Clause of the Fourteenth Amendment," Plaintiff's conspiracy claims under 42 U.S.C. §§ 1983 and 1985, and "the state law claims."  Gibson III, 411 F.3d at 446.  The Court affirmed the "dismissal of all the remaining claims."  Id.

On cross-motions for clarification, this Court determined "that the issues remaining for trial [were] Plaintiff's claims for:  (1) selective enforcement under the Fourteenth Amendment against Defendants Reilly and Pennypacker; (2) unconstitutional search and seizure, including

---

[2] The Complaint does not contain a Count 6.

3

Plaintiff's alleged detention, arrest, and false imprisonment, under the Fourth Amendment against Defendants Reilly and Pennypacker; (3) conspiracy between Defendants Reilly and Pennypacker under 42 U.S.C. §§ 1983, 1985; and (4) Plaintiff's state law claims against the NJTA, the Attorney General Defendants, and Reilly and Pennypacker." Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 75, 76, Civ. No. 02-5470 (D.N.J. Aug. 16, 2006) ("Gibson IV").  This Court further determined that Plaintiff's access to court claims for failure to provide exculpatory evidence were dismissed.

In response to motions by the various Defendants to dismiss Plaintiff's claim, this Court concluded that the United States Supreme Court's decision in Wallace v. Kato, 549 U.S. 384 (2007) effectively superceded the Third Circuit's decision with regard to Plaintiff's state constitutional claims of false arrest and illegal search.  Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 119, 120, Civ. No. 02-5470 (D.N.J. Mar. 29, 2007) ("Gibson V").  This Court found that Wallace v. Kato did not act to bar Plaintiff's state claim for racially selective enforcement of the laws.  After the Attorney General and NJTA Defendant filed a motion for reconsideration, this Court dismissed all claims against the Attorney General Defendants and noted that the state law claim of selective enforcement of the laws remained against the NJTA Defendant.  Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 130/131, Civ. No. 02-5470 (D.N.J. May 16, 2007) ("Gibson VI").  That order also dismissed Plaintiff's mistaken imprisonment claim as to all Defendants.

The Trooper Defendants and the NJTA then moved to dismiss the claims against them alleged under the New Jersey Constitution.  This Court, accepting Plaintiff's concession that his Fourth Amendment claims for illegal search and seizure and false arrest are barred in light of the

4

Wallace decision, dismissed those claims. Gibson v. Superintendent of New Jersey Dep't of Law and Public Safety, Docket Nos. 159, 160, Civ. No. 02-5470 (D.N.J. Feb. 5, 2008) ("Gibson VII"). Considering a wide array of arguments advanced by the Trooper Defendants and the NJTA, the Court determined that Plaintiff's claims of selective enforcement of the law under the Fourteenth Amendment and under New Jersey state law remained. Gibson VII, at 12. The Court also held that Plaintiff may seek damages on those claims. Id.

In the motions now before the Court, the Trooper Defendants and the NJTA move for summary judgment on Plaintiff's Complaint.

## II.   STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   ANALYSIS

#### A.   NJTA Motion for Summary Judgment

The threshold dispute with respect to the instant motion, is the parties' disagreement as to the nature of the single remaining claim against the NJTA. The NJTA argues that the claim merely aims to hold the NJTA vicariously liable for state constitutional violations perpetrated by the Trooper Defendants. Plaintiff, on the other hand, contends that the remaining claim against

6

the NJTA aims to hold it liable for its failure to train and supervise the New Jersey State Police ("NJSP"), which led to or allowed a practice of racial profiling.

In this Court's Opinion in Gibson VI, we made clear that Plaintiff's state law claim of selective enforcement of the laws remained against the NJTA. Gibson VI, at 8 ("Plaintiff alleges that the NJTA is liable for a failure to train and for respondeat superior liability **based on** the Troopers' alleged violation of the state constitution for racially selective enforcement of the laws."). The Court's analysis and description of the claim is determinative of the threshold question here. A fair reading of Plaintiff's Complaint and the previous Opinions and Orders, also support the reasonable conclusion that Plaintiff's remaining claim against the NJTA is based upon the Trooper Defendants' alleged violation of the New Jersey Constitution and predicated on two theories of liability: (1) vicarious liability for the alleged violations committed by the Troopers and (2) an alleged failure to train and supervise which led to those violations.[3]

### 1. Vicarious Liability

The NJTA moves for summary judgment on Plaintiff's claim that the NJTA is vicariously liable for the alleged constitutional rights violations perpetrated by the Trooper Defendants, contending that it may not be liable based upon a theory of respondeat superior for the acts of the Troopers when federal civil rights actions against government entities may not be premised on respondeat superior liability. Plaintiff does not respond to this contention in his responsive

---

[3] The NJTA represented in its own Reply Brief (Docket No. 128) on its Motion for Reconsideration that Plaintiff's claims against the NJTA "were limited to claims for failure to train and supervise and for respondeat superior liability." Although, as the Court noted in Gibson VI, the NJTA did not seem to understand that a defendant entity may be held liable based on underlying alleged constitutional violations, the fact remains that the pleading shows that the NJTA saw a failure to train and supervise as a separate theory of liability from that of respondeat superior or vicarious liability.

pleading.

Where a plaintiff claims that a government entity is liable for the constitutional rights violations of its employee, the availability of a respondeat superior theory of liability depends upon the basis of the underlying allegation. The NJTA would have the Court believe that allegations grounded in the New Jersey Constitution should not be able to proceed against government entity employers because, under 42 U.S.C. § 1983, a local government entity such as a municipality "cannot be held liable solely because it employs a tortfeasor." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978). This Court has previously held the provisions of the New Jersey Tort Claims Act regarding intentional torts by employees to be inapplicable to violations of state constitutional rights. Garcia v. New Jersey, Civ. No. 06-435, 2006 WL 3490348, *3 (D.N.J. Dec. 1, 2006) (citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 604 (D.N.J. 2002)). Likewise, a claimed violation of rights protected by the New Jersey Constitution may be alleged in terms of respondeat superior liability, regardless of the corollary prohibition on such a theory of liability in a case claiming a violation of federal constitutional rights. The New Jersey Constitution does not prohibit liability based on principles of respondeat superior; nor shall this Court.[4] Accordingly, the Court will not grant summary judgment on

---

[4] The NJTA asks the Court to consider that the New Jersey Civil Rights Act, and more specifically the Governor of New Jersey's statement upon signing it, shows that the New Jersey law is an "analog" to § 1983. Setting aside the fact that signing statements need not be afforded significant weight in an analysis of legislative history, the NJTA fails to acknowledge that even if actions under the New Jersey Civil Rights Act were subject to the same limitations on vicarious liability as actions under § 1983, Plaintiff in this case may proceed in his claim against the NJTA without relying on the New Jersey Civil Rights Act at all. Unlike violations of the United States Constitution, which are actionable through § 1983, the New Jersey Constitution itself provides a remedy for violations of its provisions. Scully v. Borough of Hawthorne, 58 F. Supp. 2d 435, 459 (D.N.J. 1999).

Plaintiff's claim against the NJTA, predicated on respondeat superior liability and based upon the Trooper Defendants' alleged violation of the New Jersey Constitution, as a matter of law.

The NJTA also advances the argument that it nonetheless may not be held liable via a theory of respondeat superior because it does not control the Trooper Defendants, whose actions form the basis of the underlying alleged constitutional violation. The Court agrees.

The common law doctrine of respondeat superior provides that an employer or principal is liable for his employee's or agent's wrongful acts committed within the scope of the employment or agency relationship. Wright v. State, 169 N.J. 422, 436 (2001). Whether an agency relationship exists depends upon the control the principal has over the agent, as demonstrated by both direct and circumstantial evidence. Id. (citations omitted). Both parties rely on the Agreement between the NJTA and the Department of Law and Public Safety for the NJSP ("the Agreement") to advance their arguments regarding the available theories of liability. The NJTA points to terms providing that the New Jersey State Police Troopers assigned to the New Jersey Turnpike ("the Turnpike detachment") would be selected and assigned by the NJSP, trained pursuant to NJSP regulations, and "remain[ed] an integral part of the State Police organization and subject to State Police rules and regulations." (NJTA Ex. C.) To be sure, the Turnpike detachment was trained not only on NJSP regulations, but they also received "specific and thorough training on Turnpike rules, regulations, procedures, operations and policies immediately upon assignment to patrol or supervisory duty on the Turnpike." Id.

The terms of the Agreement lead the Court to understand that the Turnpike detachment was hired, trained, and fired by the NJSP. The Troopers assigned to the detachment were trained to enforce and/or comply with Turnpike rules, regulations, procedures, operations and policies,

9

but were always agents of their employer, the NJSP. As such, the Court finds that there is no genuine issue of fact whether the Turnpike detachment were agents of the NJTA; they were not. Accordingly, the NJTA may not be held liable under the common law doctrine of respondeat superior.

### 2.     Liability for Failure to Train and Supervise

Although the NJTA, in moving for summary judgment on the remaining claim against it, focuses on the question of respondeat superior liability, it also addresses the alternate theory of liability, a failure to train and supervise. The NJTA contends that there is no evidence to show that it has the authority to set a policy or custom that would give rise to racial profiling, and in fact, New Jersey law provides that the Attorney General and the Superintendent of the NJSP have exclusive authority to set policy for the NJSP. Plaintiff argues that the NJTA has endorsed a policy or custom of allowing racial profiling, has failed to supervise the NJSP to conform to applicable laws, and acted with deliberate indifference in the face of knowledge that racial profiling was taking place. The Court will consider Plaintiff's claim as alleging a failure to train and supervise, consistent with the discussion of the nature of the claim supra.

The parties agree that if the Court considered the NJTA's direct liablity for failure to train and supervise the Trooper Defendants, it should undertake an analysis under Monell, as the NJTA is considered a municipality for purposes of civil rights litigation under § 1983, and the Court agrees. The NJTA alleges that it is entitled to summary judgment on Plaintiff's civil rights claims alleged under New Jersey law based upon the fact that a municipality "cannot be held liable solely because it employs a tortfeasor." Monell, 436 U.S. at 691. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts

10

and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. A government entity's failure to train that results in a constitutional violation may establish a Monell claim. Berg v. County of Allegheny, 219 F. 3d 261 (3d Cir. 2000).

   The NJTA contends that Plaintiff has no evidence that it failed to train or supervise the Turnpike detachment, as the NJTA does not have the authority to train or supervise the NJSP. In support of its motion, the NJTA points to New Jersey statutes which describe the authority over the NJSP afforded to the Attorney General of New Jersey and the Superintendent of the NJSP, neither of which address the question of the NJTA's authority over the NJSP. Further, the NJTA refers the Court to an extensive analysis of the relationship between the NJTA and the NJSP, per the Agreement between the parties discussed supra. Plaintiff rests his argument largely on the assertion that the NJTA "helps set . . . policy, rules and regulations" for the Turnpike detachment, however, he is unable to cite provisions of the Agreement which support that contention. Plaintiff only cites two provisions: one which deems the NJTA partially responsible for setting assignment criteria for shifts, and another that charges the Turnpike detachment with enforcing NJTA rules and regulations.

   The Court finds that there is no genuine issue of material fact; the evidence presented shows that the NJTA did not have supervisory control over the NJSP such that it may be held responsible for a failure to train or supervise the Turnpike detachment. Plaintiff has failed to present a genuine issue as to the NJTA's liability under Monell.

   Accordingly, summary judgment will be granted in favor of the NJTA and against Plaintiff on the only remaining claim against the NJTA, and the NJTA will be dismissed as a

defendant in this matter.

  **B.**  **Trooper Defendants' Motion for Summary Judgment**

    **1.**  **Selective Enforcement Claims**

  The Trooper Defendants move for summary judgment on Plaintiff's selective enforcement claims under the Fourteenth Amendment and the New Jersey Constitution, contending that Plaintiff has no evidence of discriminatory purpose or effect to support such a claim.[5]  The Court disagrees and will not grant summary judgment on these claims.

  Equal protection, under the New Jersey Constitution, as under the United States Constitution, requires that similarly situated people be treated alike.  Secure Heritage, Inc. v. City of Cape May, 825 A.2d 534, 546 (N.J. Super. Ct. App. Div. 2003).  As the parties have cited no authority nor otherwise suggested that a court's analysis of claims brought pursuant to the New Jersey Constitution for equal protection are any different than the analysis of these same claims brought pursuant to the United States Constitution, this Court will rely on the same reasoning in deciding the Trooper Defendants' motions for summary judgment as to both the United State and New Jersey Constitutions.

  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  This is not a command that all persons be treated alike, but rather a direction that all persons similarly situated be treated alike.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of

---

[5]The parties appear to agree that motor vehicle laws, not narcotics laws, form the basis of Plaintiff's claims of selective enforcement.

official conduct discriminating on the basis of race." Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. To make an equal protection claim, a plaintiff must prove that the defendants' actions (1) had a discriminatory effect and (2) were motivated by a discriminatory purpose. Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977).

The parties agree that a showing of discriminatory effect requires a showing that the plaintiff was a member of a protected class, and that he was treated differently from those similarly situated who were not in that protected class. Bradley v. United States, 299 F.3d 197, 205-06 (3d Cir. 2002). In this case, the parties agree that Plaintiff is African American, and thus a member of a protected class. The Trooper Defendants contend that no matter the history of the NJSP's racial profiling, Plaintiff cannot show that he was treated differently in this case.

The New Jersey Superior Court's ruling in State v. Soto is evidence enough to create a genuine issue material fact for trial as to whether or not Plaintiff was treated differently by Defendants Troopers Reilly and Pennypacker because of Plaintiff's race. See 734 A.2d 350 (N.J. Super. Ct. L. Div. 1996). Additionally, Plaintiff has presented evidence that Trooper Pennypacker disproportionately arrested minorities. That Plaintiff was released from custody because "there was a colorable basis to believe that Plaintiff's stop and arrest was the result of an unlawful racial profiling stop," Gibson I, at 10, supports this Court's conclusion that there is a genuine issue of material fact as the basis of the Trooper Defendants' decision to stop and arrest Plaintiff. The credibility question, whether these Troopers actually stopped this Plaintiff for a discriminatory reason, is a matter for a jury to determine and is not appropriately decided by this Court. Accordingly, the Court will deny the Trooper Defendants' motion for summary judgment

13

Plaintiff's claims of selective enforcement, under both the Fourteenth Amendment and the New Jersey Constitution.

### 2. Conspiracy Claims

The Trooper Defendants also move for summary judgment on Plaintiff's conspiracy claims advanced under 42 U.S.C. §§ 1983 and 1985, contending that Plaintiff has no evidence of a conspiracy. The Court is not convinced that there is no genuine issue of material fact to support a finding that there was a conspiracy, so summary judgment will be denied.

Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prove that Defendants conspired to violate his civil rights, in violation of 42 U.S.C. § 1985(3), Plaintiff must prove the existence of (1) a conspiracy motivated by invidious discriminatory animus, (2) for the purpose of depriving him, either directly or indirectly, of the equal protection of the laws, (3) that there was an act in furtherance of the conspiracy, and (4) that he was, as a result, injured in his person or deprived of any right or privilege of a citizen of the United States. See Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006).

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him . . . of a constitutional right 'under color of law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)), abrogated on other grounds, United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003).

To determine whether a conspiracy existed, the Court must look to state law. Under New

Jersey law, the elements of a civil conspiracy are "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages." Farris v. County of Camden, 61 F. Supp. 2d 307, 330 (D.N.J. 1999).  An agreement can be shown by direct or circumstantial evidence.  Adams v. Teamsters Local 115, 214 Fed. App'x. 167, 172 (3d Cir. 2007).  To sustain an action for civil conspiracy "a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause." Farris, 61 F. Supp. 2d at 330.  "The question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can 'infer from the circumstances [that the alleged conspirators] had a meeting of the minds and thus reached an understanding' to achieve the conspiracy's objectives." Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993).

   In this case, Plaintiff has specifically identified the members of the alleged conspiracy, Reilly and Pennypacker; he has proffered facts from which a jury could infer a meeting of the minds occurred between the Trooper Defendants; and he has presented evidence that he was discriminated against on the basis of race and denied equal protection of the law in furtherance of the alleged conspiracy.  Cf. Dunkel v. Dunkel, Civ. No. 93-1264, 1993 WL 548282 (E.D. Pa. December 30, 1993) (dismissing plaintiff's § 1985(3) claim because of lack of factual specificity as to requisite elements).  Plaintiff adduces facts to support that the Trooper Defendants were part of a conspiracy insofar as they participated in a pattern of racially motivated misconduct, racial profiling by the NJSP, which led to Plaintiff's constitutional injuries.  As a result, the

Trooper Defendants are not entitled to summary judgment on Plaintiffs' § 1985 claim. Also, because Reilly and Pennypacker were acting as NJSP Troopers at the time of Plaintiff's stop and arrest, they were acting under the color of state law and may be liable under § 1983. Accordingly, the Court will deny summary judgment for the Trooper Defendants on Plaintiff's conspiracy claims under both §§ 1983 and 1985.

### 3.     Claims Against Pennypacker

The Trooper Defendants additionally move for summary judgment on all claims against Defendant Trooper Pennypacker, contending that because he did not stop or search Plaintiff, his lack of direct participation in the underlying incident protects him from liability.

The Trooper Defendants, as the moving party, must satisfy their burden by either (1) submitting affirmative evidence that negates an essential element of Plaintiff's claim; or (2) demonstrating to the Court that Plaintiff's evidence is insufficient to establish an essential element of the his case.  The Trooper Defendants bear the initial burden of informing the Court of the basis for their motion, and identifying where in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," the Court may look to find the conspicuous absence of a genuine issue of material fact for trial.  Fed. R. Civ. P. 56. Although the Trooper Defendants need not present evidence to meet their burden, they have not done enough to meet their burden on a motion based on an allegation of insufficient evidence.

 Accordingly, the Court will deny the Trooper Defendants' motion for summary judgment on claims against Defendant Trooper Pennypacker.

## IV.   CONCLUSION

Based upon the foregoing, the Court will GRANT summary judgment for the NJTA and

against the Plaintiff on the only remaining claim against the NJTA.  Further, the Court will DENY summary judgment for the Trooper Defendants.  The accompanying Order shall issue today.

Dated:     3-31-09                                                                     /s/ Robert B. Kugler
                                                                                                      ROBERT B. KUGLER
                                                                                                      United States District Judge